The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CAROL LARSON, *personal representative of the estate of Patricia Pearcy*,

Plaintiff,

v.

JACKSON NATIONAL LIFE INSURANCE COMPANY,

Defendant.

NO. 23-cv-00354-RSL

**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION**

This matter comes before the Court on plaintiff's motion for reconsideration of the Court's order resolving the parties' cross-motions for summary judgment. Dkt. 133. Defendant opposes the motion. Dkt. 135. Having reviewed the parties' memoranda, the record of the case, and the relevant legal authority, the Court denies the motion for the following reasons.

Patricia Pearcy was the insured under a federally tax-qualified long-term-care insurance policy (the "Policy") issued by defendant Jackson National Life Insurance Company ("Jackson"). Plaintiff Carol Larson ("Larson"), Pearcy's daughter and attorney-in-fact, instituted this lawsuit against Jackson regarding its handling of Pearcy's requests for benefits under the Policy. The parties cross-moved for summary judgment, and on August 4, 2026, the Court granted in part and denied in part each motion (the "August Order"). Dkt. 129. Larson now seeks reconsideration of portions of the August Order based on manifest error. Dkt. 133.

Motions for reconsideration are disfavored and constitute an extraordinary remedy. *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). They will ordinarily be denied "in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to [the court's] attention earlier with reasonable diligence." LCR 7(h)(1). Motions for reconsideration are not a vehicle for relitigating arguments previously presented or raising what could have been presented before the challenged ruling. *Karpenski v. American General Life Companies, LLC*, 999 F. Supp. 2d 1235, 1239 (W.D. Wash. 2014).

Larson challenges four aspects of the August Order. First, she argues that Jackson's April 3, 2020 decision gave rise to a separate, timely claim under the Insurance Fair Conduct Act ("IFCA"). Second, she contends that the Court improperly determined that

Dr. Lloyd did not qualify as a Licensed Health Care Practitioner ("LHCP") under federal law without affording her notice or an opportunity to respond. Third, she challenges the Court's conclusion that no qualifying Plan of Care was established for the 2019 Benefit Claim. Finally, Larson argues that the Court improperly dismissed her bad-faith and Washington Consumer Protection Act ("WCPA") claims arising from the 2019 Benefit Claim for lack of evidence of resulting harm. None of these arguments establishes manifest error warranting reconsideration.

**The IFCA Claim Arising from the 2019 Benefit Claim**

Larson argues that the Court manifestly erred in concluding that Jackson's April 3, 2020 reaffirmation of its January 3, 2020 denial did not give rise to a separate, timely IFCA claim. She emphasizes that she is not arguing that reconsideration of the January 3 decision restarted the limitations period for that denial; rather, she contends that the April 3 decision constituted a new, independently actionable denial of benefits subject to its own limitations period. The August Order, however, expressly considered and rejected the premise that the April 3 decision constituted a separate denial of benefits. After examining the claim documents, including Larson's characterization of her February submission as a request for reconsideration of the January 3 denial, Jackson's treatment of that submission as reconsideration, and the fact that both decisions concerned the same services and benefit period, the Court concluded that the April 3 decision reaffirmed the January 3

denial rather than independently adjudicating a new request for benefits. Dkt. 129 at 7–10. Contrary to what Larson argues that conclusion is not inconsistent with the Court's recognition that Jackson's subsequent investigative conduct could support a separate common-law bad-faith theory, which may arise from unreasonable claims handling without a new denial of benefits. *Id*. at 13–14. Larson identifies no facts or legal authority overlooked by the Court that would establish manifest error in its determination that the January 3 and April 3 decisions concerned a single benefit claim.[1]

Larson also argues that the discovery rule precluded her IFCA claim from accruing on January 3, 2020 because she did not learn of Jackson's alleged investigative deficiencies until September 2022, when she reviewed its response to the Washington Office of the Insurance Commissioner. Although Larson previously alleged that Jackson failed to disclose its investigative omissions, she did not argue at summary judgment that her subsequent discovery of those omissions postponed accrual of her IFCA claim based on the 2019 Benefit Claim. The information on which Larson now relies was available to

---

[1] The fact that Jackson considered additional medical evidence and engaged in further claims-handling activity before reaffirming its decision did not transform that reaffirmation into a separate denial of benefits for IFCA purposes. Nor did Jackson's inclusion of another 60-day review period in its April 3 letter establish that it adjudicated a new claim for benefits. Even assuming the Policy did not impose that deadline, the opportunity to request further review of an existing coverage decision did not transform the reaffirmation into a separate denial for IFCA purposes.

her well before the parties moved for summary judgment, and she offers no explanation for failing to advance this discovery-rule theory earlier. Reconsideration is not an opportunity to raise arguments that could have been presented before the challenged ruling. LCR 7(h)(1). Larson therefore has not established manifest error warranting reconsideration.

**Dr. Lloyd's Qualification as an LHCP**

Larson next asserts that the Court erred in concluding that Dr. Lloyd did not qualify as an LHCP under 26 U.S.C. § 7702B(c)(4). She contends that Jackson never raised this issue and that the Court resolved it without providing her notice or an opportunity to respond. This argument overlooks the issues presented in the parties' summary judgment briefing. Jackson expressly challenged Dr. Lloyd's professional qualification under the Policy, and the Court concluded that he did not satisfy the Policy's definition of an LHCP. Dkt. 129 at 24. The Court then considered and rejected Larson's own argument that the Policy must be read in conjunction with § 7702B(c)(4), which she maintained encompassed Dr. Lloyd.[2] *Id*. at 25–26. Having raised that statutory argument herself,

---

[2] The Court did not disregard the statute's residual category of qualifying practitioners as Larson claims. Rather, it concluded that Larson had identified no requirements prescribed by the Secretary that would encompass Dr. Lloyd, and that neither Washington's professional licensing requirements nor the National Practitioner Data Bank Guidebook supplied such authority. Dkt. 129 at 25.

Larson cannot reasonably contend that the Court resolved an unanticipated issue without affording her an opportunity to address it. She has therefore failed to establish manifest error warranting reconsideration.

**The Plan-of-Care Requirement for the 2019 Benefit Claim**

Larson next argues that the Court erred in concluding that no qualifying Plan of Care existed for the 2019 Benefit Claim because Jackson failed to obtain potentially relevant documentation from Pearcy's treating providers. This argument likewise fails to establish manifest error. The Court expressly considered Dr. Pense's recommendations, the pre-admission medical records, and Normandy Park's Individual Service Plan, concluding that, even viewed collectively and in the light most favorable to plaintiff, these documents did not permit a reasonable jury to find that an LHCP initiated and approved a qualifying Plan of Care before Pearcy began receiving the claimed services or that such a plan was confirmed in writing at the required sixty-day intervals. Dkt. 129 at 43–46. The Court also specifically addressed Jackson's failure to obtain additional medical records, recognizing that this failure could bear on the reasonableness of its investigation but did not establish that the services Pearcy received satisfied the Policy's Plan-of-Care requirement. *Id*. at 45. Larson identifies no evidence or legal authority overlooked by the Court that would alter these conclusions. Her disagreement with the Court's assessment of the evidence does not warrant reconsideration.

**The Bad-Faith and WCPA Claims based on the 2019 Benefit Claim**

Larson argues that the Court improperly granted summary judgment on her bad-faith and WCPA claims arising from the 2019 Benefit Claim based on the absence of resulting harm. She contends both that Jackson failed to raise the ground and that the record contained evidence of compensable injury. Neither argument establishes manifest error.

Jackson expressly challenged Larson's evidence of harm in its opposition to her partial summary judgment motion (Dkt. 111 at 4, 20) and incorporated that argument into its reply in support of its motion for summary judgment (Dkt. 123 at 12). Moreover, Larson specifically responded to Jackson's no-harm argument in her reply in support of partial summary judgment. Dkt. 125 at 13-14. Thus, the issue was raised in the summary judgment briefing and Larson had an opportunity to address it.

Nor has Larson demonstrated that the Court overlooked evidence of compensable harm. The August Order recognized that Jackson's investigation of the 2019 Benefit Claim may have been unreasonable but concluded that Larson had not identified harm proximately caused by that conduct. Dkt. 129 at 64–65, 68. Larson's declaration describes her efforts to obtain information and assist Jackson with the claims process but does not establish that Pearcy or her estate incurred investigative expenses or otherwise suffered compensable harm as a result of Jackson's handling of the reconsideration. Dkt. 100 ¶¶ 3,

6–9. Nor does Pearcy's continued payment of premiums establish such harm, given the Court's determination that benefits were not payable for the 2019 Benefit Claim. *Id.* ¶ 17; Dkt. 129 at 43–46. Finally, although Larson now asserts that Pearcy may have suffered emotional distress and identifies litigation-related expenses, she has not pointed to evidence establishing that such injuries were caused by Jackson's allegedly unreasonable reconsideration. Larson therefore has not demonstrated that the Court overlooked material evidence or otherwise committed manifest error in dismissing the bad-faith and WCPA claims arising from the 2019 Benefit Claim.

For the foregoing reasons, the Court DENIES Larson's motion for reconsideration (Dkt. 133).

DATED this 30th day of October 2026.

Robert S. Lasnik
United States District Judge